WACHOVIA BANK & TRUST COMPANY, ADMINISTRATOR, C. T. A. OF THE ESTATE OF HERBERT GILLESPIE BARNES, DECEASED v. WESTCHES-TER FIRE INSURANCE COMPANY

No. 5

(Filed 11 March 1970)

**1. Insurance § 6— construction of policy — question of law**

The meaning of language used in a policy of insurance is a question of law.

**2. Insurance § 6— resolving ambiguity in insurance policy**

Since the words used in an insurance policy have been selected by the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company.

**3. Insurance § 6— ambiguity in policy terms — contentions by insured and company**

Ambiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning.

**4. Insurance § 6— construction of policy — ambiguity — enforcement of contract**

No ambiguity exists in an insurance policy unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend; if it is not, the court must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay.

**5. Insurance § 6— objective of policy construction**

The objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued.

**6. Insurance § 6— meaning of term defined in policy**

When the policy contains a definition of a term used in it, such meaning must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise.

**7. Insurance § 6— meaning of nontechnical words not defined in policy**

In the absence of a definition in the policy, nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise; if such word has more than one meaning in its ordinary usage and if the context does not indicate clearly the one intended, it is to be given the meaning most favorable to the policyholder, or beneficiary, since the insurance company selected the word for use.

**8. Insurance § 6— construction of policy terms — resort to other portions of policy**

Where the immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy, and all clauses of it are to be construed, if possible, so as to bring them into harmony.

**9. Insurance § 6— effect given each word in policy**

Each word is deemed to have been put into the policy for a purpose and will be given effect if possible by any reasonable construction.

**10. Insurance § 6— construction of exclusions, conditions and limitations**

Exclusions from, conditions upon and limitations of undertakings by the company, otherwise contained in the policy, are to be construed strictly so as to provide the coverage which would otherwise be afforded by the policy.

**11. Insurance § 68— automobile liability policy insuring two vehicles — medical payments coverage — one contract**

Automobile liability policy providing medical payments coverage for two described vehicles is one contract, not two separate contracts, the policy provision that the terms of the policy apply "separately" to each automobile merely having the effect of repeating, as to each automobile, all of the terms applicable to the medical payments coverage provision.

**12. Insurance § 68— medical payments provision of automobile liability policy — definition of "struck by an automobile"**

The term "struck by an automobile," as used in the medical payments provision of an automobile liability policy, includes, nothing else appearing, one who is injured when the vehicle, occupied by him, is struck by another automobile and is not limited to collisions between automobiles and pedestrians, or to other situations involving physical contact between the body of the claimant and the automobile in question.

**13. Insurance § 68— medical payments provision of automobile liability policy — "owned automobile" — "non-owned automobile" — "struck by an automobile"**

Where automobile liability policy provided medical payments coverage for bodily injuries received by insured in an accident (a) while he occupied "the owned automobile," (b) while he occupied "a non-owned automobile," or (c) if he was "struck by an automobile," assuming the policy dealt with but one "owned automobile," the intent of the policy was (1) to provide medical payments coverage to insured for any injury sustained by him as the result of an accident while he was occupying that automobile, whether the cause of the accident be the striking of his vehicle by another vehicle or not, (2) to afford such coverage to him while he was occupying a "non-owned automobile," whatever the cause of the accident from which the injury resulted, and (3) to afford coverage to the insured when "struck by an automobile" while he was neither the occupant of the "owned automobile" nor the occupant of a "non-owned automobile."

**14. Insurance § 68—  medical payments coverage — policy on automobile — pickup truck owned by insured**

Although a Ford pickup truck was owned by insured in the ordinary meaning of that term, it would not have been an "owned automobile" or a "non-owned automobile" within the terms of the medical payments provision of a liability policy on a Pontiac automobile, those terms having been defined in the policy, had there been no separate premium paid for the Ford pickup truck in connection with medical payments coverage, and insured, members of his family and others riding in the pickup truck would not have had the benefit of the medical payments coverage unless the accident which caused their injury was due to the truck's being struck by another automobile.

**15. Insurance § 68—  liability policy on automobile and pickup truck — purpose of inclusion of truck on declarations page and of separate medical payments premium for truck**

The purpose of the inclusion of a Ford pickup truck in the declarations page of a liability policy on a Pontiac automobile and of the payment of a separate medical payments premium on account of the pickup truck was to provide medical payments coverage to insured, members of his family and others if they should be injured in an accident while riding in the truck, irrespective of the cause of the accident, the purpose not being to double the amount of medical payments coverage afforded by the policy to insured, members of his family and others while occupying the Pontiac automobile.

**16. Insurance § 68—  liability policy on two automobiles — medical payments coverage for each automobile**

By virtue of the provision for separate application of the terms of an automobile liability policy to each automobile designated on the declarations page, the limit of liability for medical payments of "$5,000 each person" must be deemed to have been repeated as to each such automobile.

**17. Insurance §§ 6, 68—  liability policy on two automobiles — provision limiting amount of liability to one person — omission of such provision from medical payments section**

Insertion of a provision in the liability section of an automobile policy that "the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability," and the omission of such provision from the medical payments section of the policy, did not make the medical payments section ambiguous or clearly show an intent to provide double coverage for an injury to the insured in a collision with the vehicle of another while the insured was riding in one of the "owned automobiles" covered by the policy.

**18. Insurance §§ 6, 68—  medical payments coverage — two automobiles — provision limiting amount of medical payments to one person — previous ambiguity**

The fact that an insurance company now includes a provision in the medical payments section of an automobile liability policy that, regardless of the number of automobiles to which the policy applies, the company's liability for medical payments to each person, stated on the declarations page of the policy, is the limit of its liability for all damages sustained by

one person as the result of any one occurrence, does not show that the company recognized a preexisting ambiguity therein.

**19. Insurance § 68— liability policy on two vehicles — accident while occupying owned automobile — medical payments coverage**

Where insured paid separate medical payments premiums for a Pontiac automobile and a Ford pickup truck under an automobile liability policy providing medical payments coverage of "$5,000 each person" for bodily injuries received by insured in an accident (a) while he occupied the "owned automobile," (b) while he occupied a "non-owned automobile,'" or (c) "if he was struck by an automobile," and insured sustained bodily injuries in a collision with the vehicle of another while occupying the Pontiac automobile, *held*, (1) the insured's accident did not result from being "struck by an automobile" within the meaning of the policy, and (2) the policy limits the company's liability for medical expense for injuries sustained by insured in an accident while he was occupying the Pontiac, an "owned automobile," to $5,000.

BOBBITT, C.J., dissenting.

SHARP, J., joins in dissenting opinion.

ON certiorari to the Court of Appeals to review its decision in 6 N.C. App. 277, 170 S.E. 2d 72.

The Court of Appeals reversed the judgment of the District Court of Wake County. The District Court sustained the defendant's demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action and dismissed the action. The complaint alleges in substance:

The plaintiff is the administrator of the estate of Herbert Gillespie Barnes, who owned a 1960 Pontiac automobile and a 1957 Ford pickup truck. The defendant issued to Mr. Barnes an automobile liability insurance policy, a copy of which is attached to and made a part of the complaint. The policy provided medical payments coverage for each of the Barnes vehicles, for which coverage he paid a separate premium for each vehicle. While it was in effect, the Pontiac, driven by Mr. Barnes, was in a head-on collision with another automobile not described in the policy (said in the briefs to have been owned and operated by "a third party"). In this collision, Mr. Barnes sustained bodily injuries, from which he died, necessitating expenditures for medical, hospital, nursing and funeral services of $13,389.37. The plaintiff filed its claim for $10,000 under the Medical Payments provision of the policy. The defendant paid $5,000 without prejudice to the remainder of the claim and denied liability for such remainder. The plaintiff prays judgment for such remainder.

The declarations page of the policy shows a medical payments

premium of $8.80 on account of Car No. 1 (the Pontiac) and $8.00 on account of Car No. 2 (the Ford pickup) and states:

"The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

### COVERAGES AND LIMITS OF LIABILITY
### C — MEDICAL PAYMENTS

$5,000
each person"

The policy contained also the following provisions material to this appeal:

"The company * * * agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all the terms of this policy:

*        *        *

### PART II — EXPENSES FOR MEDICAL SERVICES

"Coverage C — Medical Payments: To pay all reasonable expenses incurred * * * for necessary medical * * * hospital, professional nursing and funeral services:

"Division 1. To or for the named insured and each relative who sustains bodily injury * * * caused by accident,

(a)  while occupying the owned automobile,

(b)  while occupying a non-owned automobile, but only if such person has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission, or

(c)  through being struck by an automobile or by a trailer of any type; * * *

"*Definitions:* The definitions under Part I apply to Part II, and under Part II:

'*occupying*' means in or upon or entering or alighting from.

[From Part I] '*named insured*' means the individual named in Item 1 of the declarations [Herbert Gillespie Barnes] * * *

'*owned automobile*' means

(a)  a private passenger, farm or utility automobile described

in this policy for which a specific premium charge indicates that coverage is afforded * * *

'*non-owned automobile*' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;

\* \* \*

"*Limit of Liability:* The limit of liability for medical payments stated in the declarations as applicable to 'each person' [$5,000] is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident.

\* \* \*

## CONDITIONS

\* \* \*

"4. Two or More Automobiles — Parts I, II, III: When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each * * *

\* \* \*

## PART I — LIABILITY

\* \* \*

"The insurance afforded under Part I applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

Prior to filing its demurrer, the defendant filed answer in which it admitted all of the allegations of the complaint material to the present inquiry, and for a further answer and defense alleged certain of the above quoted provisions of the policy which the defendant, in its answer, asserts limit its liability to the plaintiff to the amount of $5,000, which has heretofore been paid.

Upon the filing of this answer, the plaintiff demurred to such further answer on the ground that it does not state facts sufficient to constitute a defense to the plaintiff's cause of action and moved for judgment upon the pleadings. The District Court overruled the plaintiff's demurrer to the answer and denied the motion for judgment on the pleadings.

*Young, Moore & Henderson, by B. T. Henderson II and John C. B. Regan III for defendant appellant.*

*Dupree, Weaver, Horton, Cockman & Alvis, by F. T. Dupree, Jr., and John E. Aldridge, Jr. for plaintiff appellee.*

Lake, J.

[1]    The sole question before us is, What is the meaning of the language used in this policy of insurance? This is a question of law. *Lowe v. Jackson,* 263 N.C. 634, 140 S.E. 2d 1; *Parker v. Insurance Co.,* 259 N.C. 115, 130 S.E. 2d 36. The rules for determining it have long been established.

[2-4]    The words used in the policy having been selected by the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company. *Williams v. Insurance Co.,* 269 N.C. 235, 152 S.E. 2d 102; *Insurance Co. v. Insurance Co.,* 266 N.C. 430, 146 S.E. 2d 410; *Mills v. Insurance Co.,* 261 N.C. 546, 135 S.E. 2d 586. However, ambiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning. No ambiguity, calling the above rule of construction into play, exists unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend. *Squires v. Insurance Co.,* 250 N.C. 580, 108 S.E. 2d 908. If it is not, the court must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay. *Williams v. Insurance Co., supra; Huffman v. Insurance Co.,* 264 N.C. 335, 141 S.E. 2d 496; *Motor Co. v. Insurance Co.,* 233 N.C. 251, 63 S.E. 2d 538.

[5-7]    As in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued. *Motor Co. v. Insurance Co., supra; Kirkley v. Insurance Co.,* 232 N.C. 292, 59 S.E. 2d 629. When the policy contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise. *Kirk v. Insurance Co.,* 254 N.C. 651, 119 S.E. 2d 645. In the absence of such definition, nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise. *Peirson v. Insurance Co.,* 249 N.C. 580, 107 S.E. 2d 137. If such a word has more than one meaning in its ordinary usage and if the context does not indicate clearly the one intended, it is to be given the meaning most favorable to the policyholder, or beneficiary, since the insurance company selected the word for use.

[8-9]    Where the immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony. *Peirson v. Insurance Co., supra.* Each word is deemed to have been put into the policy for a purpose and will be given effect, if that can be done by any reasonable construction in accordance with the foregoing principles. *Williams v. Insurance Co., supra.*

[10]    Subject to these principles of construction, exclusions from, conditions upon and limitations of undertakings by the company, otherwise contained in the policy, are to be construed strictly so as to provide the coverage, which would otherwise be afforded by the policy. *Insurance Co. v. Insurance Co.,* 269 N.C. 341, 152 S.E. 2d 436; *Thompson v. Accident Association,* 209 N.C. 678, 184 S.E. 695.

[11]    We turn now to the application of these principles of construction to the terms of this policy. The policy is one contract, not two separate contracts. Under it, two automobiles are insured. By its express provision, the terms of the policy apply "separately" to each automobile. This does not make two separate contracts out of the policy. It merely has the effect of repeating, as to each automobile, all of the terms applicable to the medical payments coverage provision (or such other coverage as may be in question). These terms, as applied with reference to each vehicle, must be interpreted in the context of the entire policy unless the immediate context requires otherwise.

The Court of Appeals took the contrary view (i.e., that this policy is to be construed as if it were two separate, independent policies), which finds support in the following authorities: *Greer v. Associated Indemnity Corp.,* 371 F. 2d 29 (the parties being in agreement upon this proposition, it was not presented to the court as a question in controversy); *Travelers Indemnity Co. v. Watson,* 111 Ga. App. 98, 140 S.E. 2d 505; *Southwestern Fire and Casualty Co. v. Atkins,* 346 S.W. 2d 892 (Tex. Civ. App.); *Cockrum v. Travelers Indemnity Co.,* 420 S.W. 2d 230 (Tex. Civ. App.); 8 Appleman, Insurance Law and Practice, § 4896, 1969 pocket parts. See also: *Kansas City Fire & Marine Insurance Co. v. Epperson,* 234 Ark. 1100, 356 S.W. 2d 613, and the dissenting opinion of Tate, J., in *Odom v. American Insurance Co.,* 213 So. 2d 359 (La. Ct. App.). To the contrary, see *Pacific Indemnity Co. v. Thompson,* 56 Wash. 2d 715, 355 P 2d 12. We do not have before us the question of the maximum recovery afforded by two separate policies written by the

same insurance company upon two separate automobiles owned by the same insured and we express no opinion thereon.

In this policy, the company undertook to pay expenses incurred by or for Mr. Barnes for medical and other services rendered to or for him in consequence of bodily injuries sustained by him as the result of an accident of any one of the following three types: (a) While he occupied "the owned automobile"; (b) while he occupied "a non-owned automobile"; or (c) if he was "struck by an automobile."

[12] The term "struck by an automobile" is not defined in the policy. Consequently, it is to be given the meaning most favorable to the insured which is consistent with the use of the term in ordinary speech. In strict accuracy, the term is limited to a situation in which there is direct, physical contact between the body of the insured and an automobile. In normal speech the term has, however, a broader coverage and would include one who sustains bodily injury through the striking by an automobile of another vehicle or other object, in or upon which the injured person was. Thus, the term "struck by an automobile," as used in this policy, includes, nothing else appearing, one who is injured when the vehicle, occupied by him, is struck by another automobile and is not limited to collisions between automobiles and pedestrians, or to other situations involving physical contact between the body of the claimant and the automobile in question. *Bates v. United Security Insurance Co.,* 163 N.W. 2d 390 (Iowa); *Hale v. Allstate Insurance Co.,* 162 Texas 65, 344 S.W. 2d 430; *Cockrum v. Travelers Indemnity Co., supra.*

We do not agree, however, with the conclusion of the Supreme Court of Texas in *Hale v. Allstate Insurance Co., supra,* to the effect that the three types of accident covered by this policy are not mutually exclusive but are overlapping coverages. While the term "struck by an automobile," standing alone, would include injury sustained by the insured when "the owned automobile" occupied by him was struck by the automobile of another, we think the context in which the term appears in this policy clearly shows it was not so intended here.

[13] Assuming the insured owned but one automobile and that, therefore, the policy dealt with but one "owned automobile," it seems clear to us that the purpose of this policy was to provide medical payments coverage to the insured for any injury sustained by him as the result of an accident while he was occupying that automobile, whether the cause of the accident be the striking of his vehicle by another automobile or not. Similarly, the intent of the

policy was to afford such coverage to him while he was occupying a "non-owned automobile," whatever the cause of the accident from which the injury resulted. The purpose of provision (c), therefore, seems clearly to have been to afford coverage to the insured when "struck by an automobile," while he was neither the occupant of "the owned automobile" nor the occupant of "a non-owned automobile."

[14, 15]     The policy defines "owned automobile" and "non-owned automobile." Therefore, these terms must be so construed in the coverage clause of the policy. Had there been no separate premium paid for the Ford pickup truck in connection with medical payments coverage, though the pickup was owned by the insured in the ordinary meaning of that term, it would not have been "the owned automobile" within the coverage of the policy, nor would it have been a "non-owned automobile." Thus, in that event, the insured, the members of his family and others riding in the Ford pickup truck would not have had the benefit of the medical payments coverage afforded by this policy, unless the accident which caused their injury was due to the truck's being struck by another automobile. The purpose of the inclusion of the Ford pickup truck in the declarations page of this policy and of the payment of the premium on account of the truck was to provide medical payments coverage to Mr. Barnes, members of his family and others if they should be injured in an accident while riding in this truck, irrespective of the cause of the accident. We deem it unrealistic to hold that such inclusion of the truck upon the declarations page of the policy and such premium paid on account thereof were for the purpose of doubling the amount of medical payments coverage afforded by the policy to Mr. Barnes, members of his family and others while occupying the Pontiac automobile.

The declarations page of the policy states that the limit of the company's liability for medical payments is "5,000 each person." The declarations page states that this limit is "subject to all the terms of this policy having reference thereto." What are they?

The only other provision of the policy "having reference" to the limit of the company's liability for medical payments is:

"*Limit of Liability:* The limit of liability for medical payments stated in the declarations as applicable to 'each person' is the limit of the company's liability for *all* expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident." (Emphasis added.)

[16]     By virtue of the provision for separate application of the

terms of the policy to each automobile designated on the declarations page, this "limit of liability" must be deemed to have been repeated as to each such automobile. We find nothing in the terms of this policy "having reference" to the limit of the company's liability which indicates, or which could reasonably have been interpreted by the insured at the time he received the policy to indicate an intention to afford to him a coverage of $10,000 for medical payments on account of bodily injuries sustained by him in a collision with the vehicle of another person while he was occupying the Pontiac automobile.

Part I of the policy, dealing with the coverage of the insured against liability to others, contains the express statement that "the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability." We are advised by the plaintiff's brief that the "1967 standard provisions" of such policies now include a similar provision to the effect that, regardless of the number of automobiles to which the policy applies, the company's liability for medical payments to each person, stated on the declarations page of the policy, is the limit of its liability for all damages sustained by one person as the result of any one occurrence. For the language so used by one company, at least, see: *Hansen v. Liberty Mutual Fire Insurance Co.*, 116 Ga. App. 528, 157 S.E. 2d 768.

[17, 18] Obviously, had such a provision been inserted in the medical payments coverage provision of the policy issued to Mr. Barnes, there would be no basis whatever for the plaintiff's present contention. It does not follow, however, that the insertion of such provision in the liability section of the policy and the omission of such provision from the medical payments section made the latter ambiguous, or clearly showed an intent to provide double coverage for an injury to the insured in a collision with the vehicle of another while the insured was riding in the Pontiac automobile. Nor does the fact that the company has now included such provision in the medical payments section show that it recognized a preexisting ambiguity therein. To insert a provision which will eliminate the remotest possibility of litigation upon a given theory is not to be deemed a recognition of the reasonableness of such theory in the absence of such provision in the policy.

We are not unmindful of the fact that, as stated by the Court of Appeals, the view we take of this matter is contrary to decisions of other courts for whose views we entertain great respect. See: *Kansas City Fire and Marine Insurance Co. v. Epperson, supra; Southwestern Fire and Casualty Co. v. Atkins, supra; Government*

*Employees Insurance Co. v. Sweet,* 186 So. 2d 95, 21 A.L.R. 3rd 895 (Fla. Ct. App.); *Travelers Indemnity Co. v. Watson, supra; Lavin v. State Farm Mutual Automobile Insurance Co.,* 193 Kansas 22, 391 P 2d 992 (three separate policies on three different automobiles); *Central Surety and Insurance Corp. v. Elder,* 204 Va. 192, 129 S.E. 2d 651. See also: *Greer v. Associated Indemnity Corp., supra; Allstate Insurance Co. v. Mole,* 414 F 2d 204 (in which the Court of Appeals for the Fifth Circuit, in a Florida case before it on the ground of diversity of citizenship, refused to apply the Florida construction of medical payments coverage to liability coverage); 8 Appleman, Insurance Law and Practice, § 4896, 1969 pocket parts.

Cases reaching the same result herein reached by us are *Sullivan v. Royal Exchange Assurance,* 181 Cal. App. 2d 644, 5 Cal. Rptr. 878; *Guillory v. Grain Dealers Mutual Insurance Co.,* 203 So. 2d 762 (La. Ct. App.); *Odom v. American Insurance Co., supra.*

The briefs of the parties and our own research indicate that this question has not been presented to the courts of any jurisdiction other than those above noted. As appears in the annotation upon this subject in 21 A.L.R. 3rd 895, the courts which have allowed additional recovery because of more than one car being covered by the policy are not in agreement as to the reason for such conclusion. We do not find any of the reasons suggested therein persuasive.

In the Arkansas (*Epperson*), Texas (*Atkins*) and Georgia (*Watson*) cases, the courts rested their decisions, at least in part, upon the theory, which we reject, that the single policy is to be construed as if there were a separate, independent policy on each automobile of the policyholder. In the Kansas (*Lavin*) case, there actually were three such separate, independent policies, which the court said created "a situation where two constructions may be placed on the exclusion clauses in regard to insuring agreements."

In the Arkansas case (*Epperson*), the medical payments clause did not specify, as does the policy before us, the three types of accident for which coverage was afforded. There the court said: "[T]he policy afforded other coverage [i.e., other than liability insurance] having no connection with either insured automobile. The present claim falls in the second category; that is, medical services were to be provided if Epperson or certain members of his family should be injured in any automobile accident, regardless of whether either insured vehicle was involved. The record does not tell us whether Miss Epperson was in one of the insured cars when she was hurt. Under the terms of the contract that fact was immaterial."

Likewise, the Florida case (*Sweet*), the Georgia case ( *Watson*), the Texas case (*Atkins*) and the Virginia case (*Elder*) involved policies not identical with the one before us. In each of those policies medical payments coverage was afforded to the policyholder and members of his family "while occupying or through being struck by an automobile."

The Florida Court allowed recovery up to the stated limit multiplied by the number of vehicles designated in the policy on the ground that there was "no way to relate coverage to either" automobile of the policyholder since the policy made no distinction between injuries "sustained while the named insured was occupying or struck by either one or the other of the automobiles described in the policy or by an automobile not described in the policy."

The Texas Court said that, unless it multiplied the stated limit of coverage by the number of automobiles designated in the policy, the insured would be "no better off for having taken out medical payments on both cars than on one car." Under the terms of the policy there involved, the insured, without payment of the second premium, would have had coverage if injured by accident while occupying the second vehicle designated in the policy even though the cause of the accident was not the striking of such vehicle by the automobile of another. As above stated, under the policy before us this would not have been true and by paying the premium for the second car the policyholder and members of his family and other occupants of that car were insured against medical expense due to injuries by accident not caused by a collision with another vehicle. This additional coverage purchased with the second premium was a substantial consideration therefor and distinguishes the case before us from those above mentioned.

In the *Elder* case, the wife of the policyholder was injured while a passenger in a vehicle owned and operated by another. Since the policy afforded medical payments coverage "while occupying * * * an automobile," she was covered. The conclusion of the Virginia Court that the provision in the policy limiting the amount recoverable was ambiguous was quite obviously influenced by the fact that the insurance company's own claim superintendent, in a letter written to the plaintiff's counsel after the filing of her claim, construed the policy as providing coverage up to the stated limit multiplied by the number of cars designated in the policy.

[19] In our view the plain and ordinary meaning of the words used in the policy before us, construed pursuant to the above stated rules for construction of insurance policies, leads inescapably to these

conclusions: (1) The accident in which Mr. Barnes sustained his injuries was not of the type covered by Item (c) of the medical payments coverage provision; and (2) the policy limits the company's liability for medical expenses for injuries sustained by him in an accident while he was occupying "the owned automobile" (the Pontiac) to $5,000. Consequently, we hold that the judgment of the District Court of Wake County was correct and its reversal by the Court of Appeals was error.

Reversed.

BOBBITT, C.J., dissenting.

The policy provides: "When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each. . . ." A separate premium was established and paid for a medical payments clause in respect of each of the two motor vehicles described in the policy. In my view, defendant's liability is the same as if defendant had issued a separate policy on each motor vehicle. Hence, for the reasons stated by Campbell, J., in his opinion for the Court of Appeals and in accord with the weight of authority in other jurisdictions, I vote to affirm the decision of the Court of Appeals. Under the rule adopted by the majority, a person who owns two or more motor vehicles would do well to have each *separately insured* by the same or different companies.

SHARP, J., joins in this dissenting opinion.