CAROL W. BENFIELD v. PILOT LIFE INSURANCE COMPANY

No. 8619DC222

(Filed 5 August 1986)

**Insurance § 29— husband and wife living apart—no legal separation—wife's right to life insurance proceeds**

    Plaintiff was not legally separated from her husband at the time of his death so as to bar her from receiving life insurance proceeds, though she was living separate and apart from him pursuant to a Temporary Protective Order under N.C.G.S. Chapter 50B, since the Order was not issued as a part of a proceeding to affect the marital status of the parties and thus did not constitute a legal separation.

APPEAL by defendant from *Grant, Judge*. Judgment entered 24 January 1986 in District Court, ROWAN County. Heard in the Court of Appeals 12 June 1986.

    *Burke and Donaldson, by Arthur J. Donaldson, for plaintiff appellee.*

    *Kluttz, Hamlin, Reamer, Blankenship and Kluttz, by Malcolm B. Blankenship, Jr., for defendant appellant.*

BECTON, Judge.

This action was brought by Carol W. Benfield to recover life insurance proceeds under a group policy providing benefits upon the death of her spouse unless they were legally separated. The trial court found that Carol Benfield and her husband were not

legally separated at the time of his death; thus, Mrs. Benfield was entitled to the proceeds. Pilot Life Insurance Company (Pilot Life) appeals. We affirm.

Pilot Life issued a policy through Carol Benfield's employer, Carter Chair Corporation, providing for a $2,000 death benefit payable to Mrs. Benfield upon the death of her husband. Under the terms of the policy, Mr. Benfield was an eligible dependent unless they were "legally separated or divorced." Prior to and continuing until the time of his death, Mr. and Mrs. Benfield had experienced domestic difficulty. In February 1985, Mrs. Benfield obtained a Temporary Protective Order under Chapter 50B. This temporary order, later renewed, contained findings that Mr. Benfield had physically assaulted Mrs. Benfield, ordered him to vacate and not return to the family residence, and granted exclusive possession and full use of the home to Mrs. Benfield. The Benfields did not live together from the date of the first protective order until Mr. Benfield's death in April 1985.

Pilot Life contends that the Temporary Protective Order issued by the court is a judicial acknowledgment of the parties' legal right to live apart and constitutes a "legal separation" as contemplated by the parties to the insurance contract. We might agree with Pilot Life's argument if the contract language involved were non-technical and its meaning derived solely from ordinary speech. See *Wachovia Bank and Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518 (1970). However, the phrase "unless you are legally separated or divorced" clearly connotes the legal status of the policyholder and is a technical usage defined by statute and case law. "Legally separated" has a more specialized meaning than "all instances in which spouses live apart in accordance with a judicial decree." Were it otherwise, a judicial decree sentencing one spouse to a prison term could be viewed as a legal separation in that it is a judicial acknowledgment of the obligation to live apart.

A decree of divorce from bed and board, a decree of alimony without divorce under former G.S. Sec. 50-16, or a valid separation agreement may constitute a "legal separation" which thereafter will permit either of the parties to obtain an absolute divorce on the ground of one year's separation. *Harrington v. Harrington*, 286 N.C. 260, 210 S.E. 2d 190 (1974). A court order

awarding alimony *pendente lite* and exclusive possession of the family residence also is a "legal separation." *Earles v. Earles*, 29 N.C. App. 348, 224 S.E. 2d 284 (1976); *Johnson v. Johnson*, 12 N.C. App. 505, 183 S.E. 2d 805 (1971). Common to these judicial decrees is the suspension of cohabitation between husband and wife without dissolving the marriage bond. *Rouse v. Rouse*, 258 N.C. 520, 128 S.E. 2d 865 (1963). This is also the effect of a Temporary Protective Order under Chapter 50B. Yet the judicial decrees previously found to constitute legal separations were entered in actions whose ultimate purpose was to affect the legal status of the parties as husband and wife. In contrast, the Supreme Court in *Harrington* held that in a custody proceeding, a finding that the wife had abandoned her husband did not constitute a legal separation.

The Temporary Protective Order was not issued as a part of a proceeding to affect the marital status of the parties. North Carolina General Statute Section 50B-3 (1984) provides for the granting of possession of the household to one spouse and exclusion of the other spouse for the purpose of ending domestic violence. Such protective orders are for a fixed time period, not to exceed one year. It is true that an award of alimony *pendente lite* coupled with exclusive possession of the family residence is also temporary. But unlike the party safeguarded by a protective order, a recipient of alimony *pendente lite* must be a party to a pending action for absolute divorce, divorce from bed and board, annulment, or alimony without divorce. N.C. Gen. Stat. Sec. 50-16.3 (1984).

North Carolina General Statute Section 50B-6 specifically states, "This Chapter shall not be construed as granting a status to any person for any purpose other than those expressly stated herein." There is no mention in Chapter 50B of legal separation. The legislature obviously did not intend for Chapter 50B protective orders to change marital status or to affect legal obligations such as the one in the case at bar.

We affirm the judgment of the trial court and hold that Carol Benfield was not legally separated at the time of her husband's death. She is entitled to the insurance proceeds.

Affirmed.

Judges JOHNSON and COZORT concur.