SOUTHERN FIRE & CAS. CO. v. KIRBY'S GARAGE, INC.

[162 N.C. App. 124 (2004)]

Trial—No error.

Judgment—Vacated and remanded in part.

Judges McCULLOUGH and TYSON concur.

————————————

SOUTHERN FIRE & CASUALTY COMPANY, PLAINTIFF v. KIRBY'S GARAGE, INC.,
D/B/A KIRBY'S TOWING, DEFENDANT

No. COA02-1539

(Filed 6 January 2004)

**Insurance— commercial automobile policy—UM endorsement—inapplicable to property damage**

  The uninsured motorist endorsement to a commercial automobile insurance policy did not provide underinsured motorist coverage for property damage to one of the insured's vehicles.

Appeal by plaintiff from judgment entered 2 October 2002 by Judge Ernest Fullwood in New Hanover County Superior Court. Heard in the Court of Appeals 27 October 2003.

  *Hedrick, Blackwell & Morton, L.L.P., by B. Danforth Morton, for plaintiff-appellant.*

  *No brief filed on behalf of defendant-appellee.*

EAGLES, Chief Judge.

  This appeal arises from an action for declaratory judgment to construe the terms of an insurance policy.

  The record tends to establish the following facts: On 18 December 1996, Southern Fire & Casualty Company ("Southern") issued a commercial auto insurance policy to Kirby's Garage, Inc. ("Kirby's"), covering seven tow trucks. On 23 June 1997, during the coverage period of the policy, one of Kirby's tow trucks was damaged when it was hit from behind by a truck negligently driven by Anthony J. Padgett. Padgett's truck was insured by Travelers Insurance Co. ("Travelers"). Although Kirby's damages totaled $33,759.84 ($13,759.84 for property damage and $20,000.00 for loss of use),

Padgett's policy limited coverage to $25,000.00. Padgett subsequently admitted liability and Travelers tendered payment to Kirby's in the full amount of Padgett's policy. Kirby's sought to recover the balance ($8,759.84) from Southern by filing a claim against the underinsured motorist provisions of its policy with Southern.

The schedule of coverages on the "Business Auto Coverage Form" included in Kirby's policy indicates a policy limit, *i.e.*, the most Southern will pay for any one loss or accident involving a covered auto, in the amount of $1 million. The schedule further indicates that coverage in this amount extends to (1) liability, (2) uninsured motorists and (3) underinsured motorists. Kirby's policy also included an endorsement entitled "North Carolina Uninsured Motorist Form." This endorsement, which expressly states that it "modifies" the insurance provided under the "Business Auto Coverage Form" provides:

**A. Coverage**

    **1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of:

        **a.** An "uninsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident," and

        **b.** An "uninsured motor vehicle" as defined in Paragraphs **a.** and **c.** of the definition of "uninsured motor vehicle" because of "property damage" caused by an "accident."

   . . . .

**F. Additional Definitions**

    As used in this endorsement:

   . . . .

    **4.** "Uninsured motor vehicle" means a land motor vehicle or trailer:

        **a.** For which neither a bond or policy nor cash or securities on file with the North Carolina Commissioner of Motor Vehicles provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act;

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all bodily injury liability bonds or policies at the time of an "accident" provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act but their limits are either:

> **(1)** Less than the limits of underinsured motorists coverage applicable to a covered "auto" that you own involved in the "accident"; or

> **(2)** Less than the limits of this coverage, if a covered "auto" that you own is not involved in the "accident"; or

**c.** For which the insuring or bonding company denies coverage or is or becomes insolvent; or

**d.** That is a hit-and-run vehicle causing "bodily injury" to an "insured" and neither the driver nor owner can be identified. The vehicle must hit an "insured," a covered "auto" or a vehicle an "insured" is "occupying."

(Emphasis in original).

Southern denied coverage. Citing paragraph A.1.b. of the uninsured motorist endorsement, Southern contended that Kirby's policy did not cover property damage caused by underinsured motorists. On 31 May 2001, Southern filed this action in New Hanover County Superior Court, seeking a declaration that Kirby's policy with Southern did not cover property damage caused by underinsured motorists. The trial court concluded that the policy language relating to underinsured motorist coverage was ambiguous and that this ambiguity was compounded by the schedule of coverage, which purported to cover losses caused by underinsured motorists, without limitation, up to the $1 million policy limit. Consequently, the trial court construed the policy against Southern and in favor of coverage. Southern appeals.

Southern contends that the trial court erred by concluding that the policy was ambiguous and by construing the policy to cover property damage caused by underinsured motorists. We agree.

"In interpreting insurance policies, our appellate courts have established several rules of construction. Of these, the most funda-

mental rule is that the language of the policy controls." *Nationwide Mut. Ins. Co. v. Mabe*, 115 N.C. App. 193, 198, 444 S.E.2d 664, 667 (1994), *aff'd*, 342 N.C. 482, 467 S.E.2d 34 (1996).

> [W]hen an insurance policy contains ambiguous provisions, this Court will resolve the ambiguity against the insurance company-drafter, and in favor of coverage. On the other hand, if a contract of insurance is not ambiguous, "the court must enforce the policy as written and may not reconstruct it under the guise of interpreting an ambiguous provision."

*Ledford v. Nationwide Mut. Ins. Co.*, 118 N.C. App. 44, 51, 453 S.E.2d 866, 869 (1995) (citations omitted).

"[A]mbiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). " '[L]anguage in an insurance contract is ambiguous *only* if the language is 'fairly and reasonably susceptible to either of the constructions for which the parties contend.' " *Ledford*, 118 N.C. App. at 51, 453 S.E.2d at 869 (quoting *Watlington v. North Carolina Farm Bureau*, 116 N.C. App. 110, 112, 446 S.E.2d 614, 616 (1994)) (citation omitted) (emphasis added).

After careful review of the policy at issue, we conclude there is but one fair and reasonable construction of the language relating to underinsured motorists. Accordingly, we hold that the trial court erred by concluding the terms of the policy were ambiguous.

We begin our analysis by noting that "exclusions from, conditions upon and limitations of undertakings by the company, otherwise contained in the policy, are to be construed strictly so as to provide the coverage, which would otherwise be afforded by the policy." *Wachovia*, 276 N.C. at 355, 172 S.E.2d at 522-23. Here, the schedule of coverages in the Business Auto Coverage Form purports to provide uninsured motorist coverage, without limitation, in the full amount of the policy. However, the uninsured motorist endorsement expressly states that it "modifies" the insurance provided by the "Business Auto Coverage Form." Therefore, in determining what insurance is provided by the policy, the terms of the uninsured motorist endorsement must be construed strictly.

We further note that "[w]hen the policy contains a definition of a term used in it, this is the meaning which must be given to that term

wherever it appears in the policy, unless the context clearly requires otherwise." *Wachovia*, 276 N.C. at 354, 172 S.E.2d at 522. Here, the policy specifically defines the term "uninsured motor vehicle." Therefore, by virtue of paragraph F.4.b., the term "uninsured motor vehicle" must include an "underinsured motor vehicle," wherever the term is used in the policy, unless the context provides otherwise. With these principles in mind, we now consider whether the language of the policy is ambiguous.

Paragraph A.1.a. of the uninsured motorist endorsement states that Southern will pay all sums that Kirby's would be legally entitled to recover as compensatory damages, for "bodily injury" caused by an accident with an "uninsured motor vehicle." Since nothing in the context of this provision requires that a different meaning be given to the term "uninsured motor vehicle," we must give the term the meaning provided in the policy. Applying the relevant definition, we conclude this portion of the policy (paragraph A.1.a.) unambiguously provides coverage for any compensatory damages Kirby's would be entitled to recover for "bodily injury," up to the $1 million policy limit, caused by either an uninsured or underinsured motor vehicle. Since this portion of the policy is not ambiguous, it must be enforced as written.

Much like the preceding paragraph, paragraph A.1.b. of the endorsement states that Southern will pay all sums that Kirby's would be legally entitled to recover as compensatory damages for "property damage" caused by an accident with an "uninsured motor vehicle." However, this paragraph further specifies that the definition of "uninsured motor vehicle" includes only paragraphs "a." and "c." of the definition provided in the policy. Unlike paragraph A.1.a., the context in which the term "uninsured motor vehicle" is used here indicates clearly that another definition applies to this provision. We conclude that for purposes of construing this provision, the term "uninsured motor vehicle" means only a vehicle (1) for which there is no insurance on file with the Commissioner of Motor Vehicles, or (2) for which the insuring company becomes insolvent. Neither "underinsured" motor vehicles defined by paragraph "b." nor "hit-and-run" vehicles defined by paragraph "d." of the definition provided in the policy are included within this definition of "uninsured motor vehicle." Applying this definition, we conclude this portion of the policy (paragraph A.1.b.) provides coverage for any compensatory damages Kirby's would be entitled to recover for "property damage," up to the $1 million policy limit, but only when caused by an accident with an uninsured motorist as defined in paragraphs F.4.a. and F.4.c.

In the instant case, the damage to Kirby's truck falls under paragraph A.1.b. of the uninsured motorist endorsement. Furthermore, Padgett's car may only be considered an "uninsured motor vehicle" under the policy if paragraph F.4.b. remains in the definition. Since paragraph A.1.b. specifically exempts paragraph F.4.b. from the definition of "uninsured motor vehicle," Kirby's may not recover the balance of its damages from Southern.

Nothing in the schedule of coverages changes this outcome. The schedule of coverage states only "the most [Southern] will pay for any one accident or loss." The uninsured motorist endorsement provides all the pertinent policy language with respect to the coverage of uninsured motor vehicles. Furthermore, both the schedule of coverages and the uninsured motorist endorsement expressly provide that the insurance declarations in the schedule are modified by the endorsement.

Accordingly, the decision of the trial court is hereby reversed and this matter is remanded to the New Hanover County Superior Court for entry of judgment not inconsistent with this opinion.

Reversed and remanded.

Judges HUNTER and GEER concur.