NIEMEYER, Circuit Judge, concurring in part and dissenting in part:
*564 Judge Wynn's opinion has thoroughly analyzed the liability of the Town of Mocksville under 42 U.S.C. § 1983 for the nearly $2 million judgment entered pursuant to the jury's verdict, concluding that the Town conferred policy-making authority on the Town Manager that covered the personnel actions taken by her and the Chief of Police, and I am pleased to concur in Parts III and IV of his opinion. In Part II, however, the opinion reverses the district court's conclusion that the Town's coverage under its insurance policy was limited to $1 million. The opinion concludes that because the policy was ambiguous in defining the limit of coverage, it should be construed to provide the Town with $3 million in coverage in this case, the policy's annual aggregate coverage limit. I cannot agree that the policy is ambiguous, and therefore I would affirm the ruling of the district court limiting the Town's coverage to $1 million.
The Town of Mocksville purchased an employment-practices liability insurance policy from the Interlocal Risk Financing Fund of North Carolina that provided coverage of $1 million for each applicable claim against the Town and an aggregate limit for all such claims in one year of $3 million.
On appeal, the plaintiffs contend that "[w]hile the claims of a single individual for the 'same or interrelated acts of [the defendants]' could be combined" under the each-claim limit, "the policy language chosen by [the insurer] d[id] not permit the combining of claims of multiple persons." As such, they argue, "the interrelated acts of [the defendants] as to each officer meant each officer was subject to" the policy's $1 million each-claim limit, for a total of $3 million, the aggregate annual limit. The majority opinion suggests that the policy language is ambiguous, based on how other courts have interpreted the term "interrelated" in other insurance policies and how the policy in this case defines "related," and it therefore agrees with the plaintiffs and reverses the district court.
A fair reading of the policy, however, can only lead to the conclusion that the claims of the plaintiffs in this case amount to a "single claim," as defined in the policy, with a single $1 million limit.
In the declarations section, the policy provides $1 million in coverage for each claim and $3 million in coverage as an annual aggregate limit for all claims, with each claim subject to a $5,000 deductible. A claim is defined as a "demand received by the insured" or a suit or arbitration filed against the insured. And the insured is defined to be the Town of Mocksville and its elected officials and employees for their acts "within the course and scope of their duties." Detailing how the $1 million limit is to be applied to a claim, the policy provides:
The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of ... [p ]ersons or organizations making "claims" or bringing "suits".... [T]he Each Claim Limit is the most we will pay for all loss arising out of any "employment wrongful act(s)" covered by this policy. "Claims" based on and arising out of the same act or interrelated acts of one or more insureds shall be considered to be a single "claim" .
(Emphasis added). Similarly, in defining a claim for purposes of applying the deductible amount to each claim, the policy provides, " 'Claims' based on or arising out of the same act or interrelated acts of one or more insureds shall be considered a single 'claim' ." (Emphasis added).
In short, the policy provides $1 million in coverage for each claim, which it unambiguously defines as the filing of a suit *565 against or a demand for money damages from the Town of Mocksville and its employees. And it makes absolutely clear that all "[c]laims based on and arising out of the same act or interrelated acts of one or more insureds," "regardless of the number of ... [p ]ersons or organizations making 'claims' or bringing 'suits,' " are to be treated as "a single 'claim'. " (Emphasis added).
In this case, the three plaintiff police officers collectively made a single telephone call on December 14, 2011, to the North Carolina Governor's Office about the inappropriate conduct of their chief. As a result of that call, the three officers' employment was terminated on the same day two weeks later by the Chief with the approval of the Town Manager. The plaintiffs claimed and the jury found that their termination was wrongful because it was done in retaliation for their call to the Governor's Office, in violation of their First Amendment right of free speech.
Under any fair reading of the policy, the officers' claims constituted a "single claim" as defined in the policy. While the liability of the defendants is based on three wrongful terminations, the terminations were approved collectively by the Town Manager for the single purpose of retaliating against the plaintiffs for their joint act of making the telephone call. Thus, the acts of terminating the plaintiffs' employment were "interrelated," as that term is ordinarily understood, because they were related to each other by their common connection-i.e. , their mutual relationship-to the single telephone call and the defendants' single purpose of retaliating against the plaintiffs for that call. See, e.g. , Webster's Third New International Dictionary 1182 (1993) (defining "interrelated" as "having a mutual or reciprocal relation or parallelism"). Indeed, it is difficult to imagine a reasonable meaning of interrelated that would not encompass the defendants' conduct in this case. Accordingly, under the policy's plain terms, the three terminations gave rise to a "single claim" despite the fact that the plaintiffs asserted a "number of ... [c]laims" and that they constituted a "number of [p]ersons or organizations making [the] 'claims' [and] bringing 'suits.' " Therefore, the $1 million limit, with the $5,000 deductible, applies to that single claim.
Ignoring the policy's language defining as a "single claim" all claims arising out of interrelated wrongful acts, regardless of the number of claims in the suit or the number of persons making them, the majority finds ambiguity in the coverage based on the fact that other courts interpreting the word "interrelated" within a policy definition have not defined that term "in a uniform manner." Ante at 551. And to further support its conclusion, the majority also seeks to define the undefined term "interrelated" by the term "related" as used elsewhere in the policy in a different context. At bottom, the majority reaches the conclusion that the term "interrelated" must be ambiguous and therefore should be read not to encompass claims brought by different individuals , as the plaintiffs urge. But that conclusion is explicitly foreclosed by the policy's language, which defines as a "single claim" all claims arising from the same act or interrelated acts brought by any number of persons , "regardless of the number ."
In contriving ambiguity for this policy, the majority fails to take heed of North Carolina law, which instructs that when a policy does not provide a definition, "nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise." Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co. , 276 N.C. 348, 172 S.E.2d 518, 522 (1970) (citation omitted). In *566 Wachovia Bank , the North Carolina Supreme Court further explained that ambiguity does not exist unless "the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend " and that courts may not, "under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay." Id . (emphasis added). Here, the construction advocated by the plaintiffs-that the claims of multiple individuals cannot be combined-is expressly foreclosed by the policy.
At bottom, the three plaintiffs in this case jointly made a telephone call to the Governor's Office, and for that conduct, the three were fired in violation of the First Amendment. It could not be clearer that the claims of the three officers are to be treated under the policy as a single claim for which the policy limits coverage to $1 million, less the $5,000 deductible.
For these reasons, I would affirm the district court's construction of the policy.