IN THE SUPREME COURT OF NORTH CAROLINA

No. 42A19

28 February 2020

THOMAS ACCARDI

v.

HARTFORD UNDERWRITERS INSURANCE COMPANY

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order and opinion entered on 22 October 2018 by Judge Gregory P. McGuire, Special Superior Court Judge for Complex Business Cases, in Superior Court, Wake County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(a). Heard in the Supreme Court on 2 October 2019.

*Whitfield Bryson & Mason, LLP, by Daniel K. Bryson, J. Hunter Bryson, Gary E. Mason, Daniel R. Johnson, and Gary M. Klinger, for plaintiff-appellant.*

*Wiggin and Dana LLP, by Kim E. Rinehart and David R. Roth; Ellis & Winters LLP, by Stephen D. Feldman, for defendant-appellee.*

*Sigmon Law, PLLC, by Mark R. Sigmon; and Amy Bach for United Policyholders, amicus curiae.*

*Robinson & Cole LLP, by Roger A. Peters II, for American Property Casualty Insurance Association, amicus curiae.*

BEASLEY, Chief Justice.

In this case, the Court is asked to consider whether terms of an insurance policy are ambiguous when the policy fails to explicitly provide that labor depreciation will be deducted when calculating the actual cash value (ACV) of the

damaged property. Because we conclude that the term "ACV" is not susceptible to more than one meaning and unambiguously includes the depreciation of labor, we affirm the ruling below.

<u>Facts and Procedural History</u>

Plaintiff is a resident of Wake County, North Carolina, and defendant is a Connecticut corporation licensed to sell homeowners insurance in the State of North Carolina. Plaintiff owns a home in Fuquay Varina, North Carolina that was damaged in a hailstorm on or about 1 September 2017. The storm caused damage to the roof, siding and garage of plaintiff's home and required repair and restoration. At the time of the damage, the home was insured by defendant.

Plaintiff submitted a claim to defendant requesting payment for the damage to the home. Defendant confirmed the damage was covered under plaintiff's policy and sent an adjuster to inspect the home on or about 26 September 2017. The adjuster inspected the property and prepared an estimate of the cost to repair or replace the damaged property. According to the estimate, plaintiff's home suffered $10,287.28 in loss and damages. This estimate included costs for materials and labor to repair the home, as well as sales tax on the materials.

The North Carolina Department of Insurance consumer guide to homeowner's insurance provides that when selecting homeowner's insurance, homeowners can choose to insure their home on either an ACV basis or a replacement cost value (RCV) basis. N. C. Dep't of Ins., *A Consumer's Guide to Homeowner's Insurance (2010),*

https://files.nc.gov/doi/documents/consumer/publications/consumer-guide-to-homeowners-insurance_cho1.pdf. The guide further provides that ACV is "the amount it would take to repair or replace damage to your home after depreciation," and RCV is "the amount it would take to replace or rebuild your home or repair damages with materials of similar kind and quality [at today's prices], without deducting for deprecation." *Id.* Plaintiff's insurance policy is a hybrid of the two. The terms of the policy provided that defendant would initially pay plaintiff the ACV. Once the item was repaired or replaced, defendant would settle the claim at RCV. In other words, defendant would reimburse plaintiff for any extra money paid to repair or replace the item, up to the RCV. While not defined in the base policy, the term ACV was defined in a separate endorsement limited to roof damage, which provided the following:

> You will note your policy includes Actual Cash Value (ACV) Loss Settlement for covered windstorm or hail losses to your Roof. This means if there is a covered windstorm or hail loss to your roof, [defendant] will deduct depreciation from the cost to repair or replace the damaged roof. In other words, [defendant] will reimburse for the actual cash value of the damaged roof surfacing less any applicable policy deductible.

In the current action, defendant calculated the ACV by reducing the estimated cost of repair by depreciation of property and labor, as provided in the limited endorsement. Thus, plaintiff's total estimated cost of repair for the dwelling and other structures, $10,287.28, was reduced by the $500 deductible and depreciation in the

amount of $3,043.92—which included the depreciation of both labor and materials. This resulted in plaintiff being issued an ACV payment of $6,743.36. According to plaintiff, in determining the ACV, defendant was required to separately calculate the materials and labor costs of repairing or replacing his damaged property and depreciate only the material costs, not the labor costs, from the total repair estimate. Based on this argument, plaintiff sought to represent a class of all North Carolina residents to whom defendant paid ACV payments, where the cost of labor was depreciated.

Defendant moved to dismiss for failure to state a claim under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, contending that the plain meaning of ACV includes the depreciation of both labor and materials. In ruling on the motion to dismiss, the Business Court concluded that "the term ACV as used in [t]he [p]olicy is not 'reasonably susceptible to more than one interpretation,' and that the term ACV unambiguously includes depreciation for labor costs." The Business Court determined that while the "definitions" section of the insurance policy does not provide a definition of the term "ACV," the definition used in the roof coverage addendum sufficed. Thus, the definition from the roof coverage addendum should be read in harmony with the use of the term "ACV" throughout the policy. Regarding the term "depreciation," as used in calculating ACV, the court determined that the term was unambiguous because the policy did not distinguish between depreciation of labor and depreciation of material costs.

To hold otherwise, the court stated, would be to read a nonexistent provision into the policy that excludes labor costs. In the court's view, "it does not make logical sense to separate the cost of labor from that of physical materials when evaluating the depreciation of a house or its component parts," when the value of a house is more than simply the costs of the materials used. As such, the Business Court found that the policy was unambiguous and that plaintiff's claim for breach of contract should be dismissed. We agree.

### Legal Standard

When interpreting an insurance policy, courts apply general contract interpretation rules. *See, e.g., Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). "As in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Id.* at 354, 172 S.E.2d at 522 (citing *McDowell Motor Co. v. N.Y. Underwriters Ins. Co.*, 233 N.C. 251, 63 S.E.2d 538 (1951); *Kirkley v. Merrimack Mut. Fire Ins. Co.*, 232 N.C. 292, 59 S.E.2d 629 (1950)). In North Carolina, determining the meaning of language in an insurance policy presents a question of law for the Court. *Id.*

When interpreting the relevant provisions of the insurance policy at issue, North Carolina courts have long held that any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary. *Id.* If a court finds that no ambiguity exists,

however, the court must construe the document according to its terms. *Id.* (citing *Williams v. Nationwide Mut. Ins. Co.*, 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967)).

Ambiguity is not established by the mere fact that the insured asserts an understanding of the policy that differs from that of the insurance company. *Wachovia Bank & Tr. Co.*, 276 N.C. at 354, 172 S.E.2d at 522. Rather, ambiguity exists if, in the opinion of the court, the language is "fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* The court may not remake the policy or "impose liability upon the company which it did not assume and for which the policyholder did not pay." *Id.*

If the policy contains a definition of a term, the court applies that meaning unless the context requires otherwise. *Id.* However, if the policy fails to define a term, the court must define the term in a manner that is consistent with the context in which the term is used, and the meaning accorded to it in ordinary speech. *Id.* (citing *Peirson v. Am. Hardware Mut. Ins. Co.*, 249 N.C. 580, 107 S.E.2d 137 (1959)).

<u>Analysis</u>

Here, plaintiff contends that the policy is ambiguous because it fails to provide a definition for "ACV" and "depreciation." In response, defendant argues that the policy is not ambiguous despite the lack of a detailed, explicit definition, because the definition provided in the limited endorsement should be read in harmony with the remainder of the policy. Plaintiff disagrees, arguing that language in the limited endorsement should be confined to the situations addressed therein.

Courts outside of North Carolina are split on whether the term "depreciation" includes both labor and materials. *See Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1304 (S.D. Ala. 2017) (holding that defendant had not shown that the term "ACV," which was undefined, could only be interpreted to include depreciation of labor costs); *see also Hicks v. State Farm Fire & Cas. Co.*, 751 F. App'x 703, 708 (6th Cir. 2018) (holding that even though Kentucky law defines ACV as replacement cost minus depreciation, the policy is ambiguous because it does not specifically address what can be depreciated). *But see Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 770 (W.D. Pa. 2015) (holding that labor cost was baked into the roof and, therefore, the policy insured "the finished product in issue—the result or physical manifestation of combining knowhow, labor, physical materials (including attendant costs, e.g., the incurrence of taxes), and anything else required to produce the final finished roof itself.") (emphasis omitted); *Redcorn v. State Farm Fire and Cas. Co.*, 2002 OK 15, 55 P.3d 1017 (holding that the general principle of indemnity supports including depreciation of labor). Decisions from other jurisdictions, however, provide little guidance to this Court because the policy language in each case differs meaningfully, as do the insurance laws of each state.

Upon thorough review of the policy at issue and consideration of our state's principles of contract interpretation, we concur with the Business Court's rationale and conclusion in this case. "Actual Cash Value," as used in the policy, is not susceptible to more than one reasonable interpretation and the term unambiguously

includes costs for the depreciation of labor. Although the base policy fails to define the term, the roof coverage addendum provides a definition that must be read in harmony with the remainder of the policy. *See Rouse v. Williams Realty Bldg. Co.*, 143 N.C. App. 67, 70, 544 S.E.2d 609, 612 (2001) (determining that when an insurance policy "contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise.").

Neither is the term "depreciation" ambiguous. The policy language provides no justification for differentiating between labor and materials when calculating depreciation, and to do so makes little sense. The value of a house is determined by considering it as a fully assembled whole, not as the simple sum of its material components. To conclude that labor is not depreciable in this case would "impose liability upon the company which it did not assume," and provide a benefit to plaintiff for which he did not pay. *Wachovia*, 276 N.C. at 354, 172 S.E.2d at 522. We will not do so.

Because we hold that the insurance policy at issue unambiguously allows for depreciation of the costs of labor and materials, we affirm the decision of the Business Court.

AFFIRMED.