JAMES E. HENDERSON AND WIFE, GLENDA J. HENDERSON, PLAINTIFF-APPELLEES V. UNITED STATES FIDELITY & GUARANTY COMPANY, GLENDA LINTON AND GREAT AMERICAN INSURANCE COMPANY, DEFENDANT-APPELLANTS

No. COA95-1206

(Filed 15 October 1996)

1. **Insurance § 895 (NCI4th)— indemnity policy for builder— sale of residence—unfair practice—common law definition**

The trial court erred by granting partial summary judgment for plaintiffs and should have granted summary judgment for defendants where plaintiffs brought an action against a builder which arose from the sale of a residence in a drainage area subject to severe flooding; a jury found that the builder had engaged in unfair and deceptive practices and awarded damages; the trial court trebled the jury's award for unfair and deceptive practices; plaintiffs brought this action alleging that defendant insurance companies had issued policies agreeing to indemnify the builder and that they were third party beneficiaries; defendants asserted that the policies provide no coverage; and the trial court determined that coverage exists under the advertising injury coverage of the USF&G policy and the advertising liability coverage of the Great American Policy. If coverage exists under these provisions of the policies, it exists only if the builder's acts constituted unfair competition, which is not defined in either policy. The statutory definition of unfair competition cannot be equated with the common law definition, and the term "unfair competition" appears in both policies alongside a host of readily identifiable common law torts. Given the context, it is reasonable to construe the term as a reference to the common law tort of unfair competition. The builder's actions do not parallel any of the definitions of common law unfair competition and neither

**HENDERSON v. U.S. FIDELITY & GUARANTY CO.**

[124 N.C. App. 103 (1996)]

the advertising liability nor the advertising injury provisions provide coverage.

**Am Jur 2d, Insurance §§ 703 et seq.**

**2. Insurance § 896 (NCI4th)— indemnity—unfair practice in sale of residence—not an occurrence**

The trial court did not err by granting partial summary judgment for defendants on the issue of whether their insurance policies provide coverage where plaintiffs brought an action against a builder which arose from the sale of a residence in a drainage area subject to severe flooding; a jury found that the builder had engaged in unfair and deceptive practices and awarded damages; plaintiffs brought this action alleging that defendant insurance companies had issued policies agreeing to indemnify the builder and that they were third party beneficiaries; defendants asserted that the policies provide no coverage; and the trial court determined that no coverage exists under the property damage, bodily injury, and personal injury provisions of either policy. Both policies refer to injury or damage caused by an "occurrence"; however, if an intentional act is either intended to cause injury or substantially certain to result in injury, it is not an occurrence and no coverage is provided. The builder's purposeful and intentional acts here were so substantially certain to cause injury and damage as to infer an intent to injure as a matter of law. Finally, although the USF&G policy also provided coverage for personal injury, the jury in the underlying action did not find that the insured had committed any of the acts named in the policy definition of "personal injury."

**Am Jur 2d, Insurance §§ 703 et seq.**

**Event triggering liability insurance coverage as occurring within period of time covered by liability insurance policy where injury or damage is delayed—modern cases. 14 ALR5th 695.**

Appeal by defendants from judgment entered 28 July 1995 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 21 August 1996.

*McMillan, Smith & Plyler, by James M. Kimzey and Katherine E. Jean, for plaintiff-appellees.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Elizabeth Horton, for defendant-appellant US Fidelity & Guaranty Company.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Ronald C. Dilthey and G. Lawrence Reeves, Jr., for defendant-appellant Great American Insurance Company.*

MARTIN, John C., Judge.

In September 1989, plaintiffs brought a civil action against Clifton Hicks Builder, Inc., ("Hicks") and others, alleging multiple claims for relief, including claims for negligence, breach of implied warranty, and unfair and deceptive practices in violation of G.S. § 75-1.1 *et seq.* The action arose out of a real estate transaction in which plaintiffs purchased from Hicks a residence situated in a drainage area subject to severe flooding. At the trial of the case in March 1993, the jury was unable to reach a verdict as to the issues involving negligence and breach of warranty, but found that Hicks had engaged in unfair and deceptive practices as follows: (1) Hicks falsely represented to the Hendersons that they would not have any water problems on Lot 82 (the lot the Hendersons purchased from Hicks); (2) Hicks concealed from the Hendersons the existence of a surface water flooding problem on Lot 82; and (3) Hicks concealed from the Hendersons the existence and location of a drainage grate and piping system which he had installed on Lots 83 and 84, and which piped water through Lot 82. The jury awarded damages in the amount of $500,000. The trial court declared a mistrial as to the negligence and breach of warranty issues and trebled the jury's award for unfair and deceptive practices pursuant to G.S. § 75-16.1. After applying a credit for a settlement which plaintiffs had reached with parties other than Hicks, the trial court entered judgment for plaintiff against Hicks in the amount of $1,375,000, plus costs and attorneys' fees. Hicks appealed and this Court found no error. *Henderson v. Clifton Hicks Builder, Inc.*, 117 N.C. App. 731, 453 S.E.2d 877, (unpublished), *disc. review denied*, 340 N.C. 112, 456 S.E.2d 314 (1995).

Plaintiffs also brought the present action alleging, *inter alia*, that defendant insurance companies had issued policies of insurance agreeing to indemnify Hicks for the damages and costs awarded plaintiffs in the underlying action. Plaintiffs alleged they are entitled, as third party beneficiaries under the insurance policies, to recover from defendant insurance companies the amount of the judgment, costs and attorneys' fees awarded them against Hicks.

The insurance policies at issue are (1) a comprehensive general liability policy issued by United States Fidelity & Guaranty

Company (USF&G) with limits of $1,000,000 per occurrence, and (2) an excess "catastrophe liability policy" issued by Great American Insurance Company ("Great American") with limits of $1,000,000 per occurrence. The USF&G policy provides coverage for "bodily injury," "property damage," "personal injury" and "advertising injury"; the policy issued by Great American provides excess insurance coverage for "property damage," "personal injury" and "advertising liability." In their answers, both USF&G and Great American asserted, based on definitions and exclusions contained in their respective policies, that the policies provide no coverage for Hicks' liability to plaintiffs.

Plaintiffs moved for summary judgment as to both defendants on the issue of coverage. The trial court granted partial summary judgment for plaintiffs, determining that coverage exists for plaintiffs' damages, costs, attorneys' fees, and interest under the "advertising injury" coverage of the USF&G policy and the "advertising liability" coverage of the Great American policy. The trial court also determined that no coverage exists under the "property damage," "bodily injury," and "personal injury" provisions of either policy. Both USF&G and Great American appeal.

I.

[1] By their assignments of error, defendants assert the trial court erred in determining that they provide any coverage for the payment of damages awarded plaintiffs against Hicks in the underlying lawsuit. They specifically argue that the "advertising injury" and "advertising liability" provisions of their respective policies afford no coverage for Hicks' liability. We agree.

The rules for determining the meaning of words used in an insurance policy are well established; where the words used are ambiguous or their meaning is uncertain, they must be construed in favor of the insured or beneficiary. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). Where non-technical words are not defined, they "are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise." *Id.* at 354, 172 S.E.2d at 522. Those provisions which extend coverage to the insured must be construed liberally so as to afford coverage whenever possible by reasonable construction; exclusionary provisions are not favored and, if ambiguous, will be construed against the insurer and in favor of the insured. *State*

*Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986). Where, however, no ambiguity exists, the court may not rewrite the contract and find coverage where none was contracted for. *Trust Co.*, 276 N.C. 348, 172 S.E.2d 518.

The USF&G policy provides coverage for "advertising injury" as follows:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, . . . .

The policy defines an "advertising injury" as

> injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, *unfair competition*, or infringement of copyright, title or slogan (emphasis added).

The Great American policy provides coverage for damages which the insured is legally obligated to pay because of "advertising liability." The policy defines an "advertising liability" as

> liability arising out of the named insured's advertising activities for libel, slander or defamation of character; invasion of rights of privacy; infringement of copyright, title or slogan; and piracy or *unfair competition* or idea misappropriation committed or alleged to have been committed during the policy period (emphasis added).

All parties seem to agree that if coverage exists under the "advertising injury" and "advertising liability" provisions of the USF&G and Great American policies, it exists only if Hicks' acts constituted "unfair competition." Plaintiffs contend coverage exists because the acts committed by Hicks were found by the trial court in the underlying action to have been "unfair or deceptive practices" in violation of G.S. § 75-1.1 *et seq.*

Neither policy defines "unfair competition." Thus, the issue is whether an insured's civil liability for violating North Carolina's unfair and deceptive practices statutes constitutes "unfair competition" as that term is used in defining "advertising injury" and "advertising liability" in the policies. Although the issue is one of first

impression in North Carolina, a majority of courts of other jurisdictions which have considered the issue have concluded that the phrase "unfair competition" means those claims which constitute unfair competition under the common law and does not include claims arising under statutory unfair trade or business practices acts. *See Graham Resources, Inc. v. Lexington Insurance Co.*, 625 So.2d 716 (La. App. 1 Cir., 1993), *cert. denied*, 631 So.2d 1164 (La. 1994) (misrepresentations in advertising materials, held no coverage under advertising injury); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 833 P.2d 545, 10 Cal. Rptr.2d 538 (1992) (misrepresentations to customers, held no coverage under advertising injury); *Curtis Universal v. Sheboygan Emergency Medical Services, Inc.*, 844 F.Supp. 492 (E.D. Wis. 1994) (held no coverage under advertising injury).

In *Bank of the West*, the California Court of Appeals noted:

The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection. According to some authorities, the tort also includes acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.

Expansion of legal remedies against deceptive business practices occurred not so much through the common law as through the enactment of statutes . . . .

*Bank of the West* at 1263, 833 P.2d at 551, 10 Cal. Rptr.2d at 544. The primary purpose of these statutes was to extend to the consuming public the protection once afforded only to business competitors through the common law tort of unfair competition, which required a showing of competitive injury and hence was not an effective remedy for consumers. On the other hand, statutory unfair competition extends to all unfair and deceptive practices. For this reason, the statutory definition of "unfair competition" cannot be equated with the common law definition. *Id.*

The terms of an insurance policy cannot be read in isolation but "must be construed in the context of [the] instrument as a whole." *Nationwide Mut. Ins. Co. v. Dynasty Solar, Inc.*, 753 F. Supp. 853,

856 (N.D. Cal. 1990) (quoting *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 718 P.2d 920 (1986)). The term "unfair competition" appears in both policies alongside a host of readily identifiable common law torts, including libel, slander, defamation and piracy. These named torts describe legal rights at common law among business rivals, not statutory legal rights between consumers and businesses. The Court in *Curtis Universal*, 844 F. Supp. at 501-02, found that the placement of the term within a list of specific common law torts negates a definition of the term that would include statutory claims. Given the context in which "unfair competition" appears in the policies at issue here, it is reasonable to construe the term as a reference to the common law tort of unfair competition, long recognized in North Carolina. *See Extract Co. v. Ray*, 221 N.C. 269, 20 S.E.2d 59 (1942) (unfair competition includes a party advertising that his products are identical with those of a competitor, if his statements are untrue, and it includes taking advantage of the good will and business reputation of a competitor by unfair means); *Steak House v. Staley*, 263 N.C. 199, 139 S.E.2d 185 (1964) (unfair competition amounts to a person selling goods as the goods of another or doing business as the business of another); *Foods Corp. v. Tuesday's*, 29 N.C. App. 519, 225 S.E.2d 122, *disc. review denied*, 290 N.C. 660, 228 S.E.2d 451 (1976) (palming off one's goods as those of another is unfair competition). Hicks' actions do not parallel any of the definitions of common law unfair competition. Accordingly, we hold that the term "unfair competition" as contained in the "advertising injury" and "advertising liability" coverages of the USF&G and Great American policies does not include statutory unfair and deceptive practices prohibited by G.S. § 75-1.1, *et seq.* Thus, neither the "advertising injury" coverage of the USF&G policy nor the "advertising liability" coverage of the Great American excess policy affords liability insurance coverage to Hicks for the damages awarded plaintiffs in the underlying suit.

II.

[2] By cross-assignments of error pursuant to N.C.R. App. P. 10(d), plaintiffs contend the trial court erred in concluding that neither the USF&G policy nor the Great American policy provide coverage to Hicks under the "bodily injury," "property damage," or "personal injury" provisions of the respective policies, for the damages awarded them in the underlying suit. We disagree.

The USF&G policy provides coverage on behalf of the insured for

all sums which the **insured** shall become legally obligated to pay as damages because of

A. **bodily injury** or

B. **property damage**

to which this insurance applies, caused by an occurrence, . . . .

"Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured . . . ." Great American's umbrella policy provides similar coverage for personal injury or property damage "caused by or arising out of an occurrence happening anywhere." "Occurrence" is defined as "an event or happening, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured."

The dispositive issue with regard to this coverage is whether plaintiffs' damages arose out of an "occurrence"; if the plaintiffs' injuries were either expected or intended by Hicks, no coverage is provided by either policy.

In *North Carolina Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 700, 412 S.E.2d 318, 320-21 (1992), the Supreme Court interpreted a policy which, similarly to the policies at issue here, defined "occurrence" as "an accident, including exposure to conditions, which results during the policy period in: (a) bodily injury; or (b) property damage," and excluded coverage for bodily injury or property damage "which is expected or intended by the insured . . . ." The evidence showed that defendant-insured intentionally pushed a fellow employee, who fell and was injured. The Court held that the policy provided coverage because the act of the insured was not such that an intent to injure could be inferred from the act and the insurer had not shown that the injury itself was intended. *Id.* at 706, 412 S.E.2d at 324. Under *Stox*, then, injury or damage caused by an intentional act may constitute an occurrence, as defined by the instant policies, unless the intentional act is either (1) intended to cause injury or damage, or (2) substantially certain to cause injury or damage. Put in other words, if an intentional act is either intended to cause injury or substantially certain to result in injury, it is not an occurrence under the policy definitions recited above, and no coverage is provided.

**HENDERSON v. U.S. FIDELITY & GUARANTY CO.**

[124 N.C. App. 103 (1996)]

In *Commercial Union Ins. Co. v. Mauldin*, 62 N.C. App. 461, 303 S.E.2d 214 (1983), the insured argued with his wife, fired shots into the car in which she and a friend were riding, and killed the friend. The insured stipulated that he intended to shoot his wife and shot the friend by mistake. The policy excluded coverage for injuries which were "expected or intended" by the insured. This Court found that the injury was intentional and denied coverage, on the basis that the insured should have anticipated the likelihood that one of the bullets would hit the friend. In *Russ v. Great American Ins. Companies*, 121 N.C. App. 185, 464 S.E.2d 723 (1995), *disc. review denied*, 342 N.C. 896, 467 S.E.2d 905 (1996), we held that sexual harassment is substantially certain to cause injury and therefore "intent to injure may be inferred as a matter of law from the intent to act for the purpose of determining coverage under an insurance policy."

The trial court in the underlying action determined that Hicks' unfair and deceptive practices were intentional acts. Intent to injure may be inferred as a matter of law from the intent to act, *Russ*, 121 N.C. App. 185, 464 S.E.2d 723, and such is a reasonable inference in this case. Flooding problems had already occurred on Lot 82; Hicks intentionally misrepresented and omitted information regarding these problems, even after inquiry by plaintiffs. Notwithstanding Hicks' assertions that he did not intend or anticipate his misrepresentations to injure or damage plaintiffs, such purposeful and intentional acts were so substantially certain to cause injury and damage as to infer an intent to injure as a matter of law. Accordingly, we hold that any bodily injury or property damage sustained by plaintiff as a result of Hicks' intentional conduct was not caused by an occurrence within the insuring agreements contained in the USF&G and Great American policies. Thus, no coverage is provided for "bodily injury" or "property damage" under USF&G's insurance policy, nor is there coverage for "personal injury" or "property damage" under Great American's excess policy.

The USF&G policy also provides coverage for "personal injury" which is defined in the policy as:

injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

(a) of a libel or slander of other defamatory or disparaging material, or

(b) in violation of an individual's right of privacy;

except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the named insured shall not be deemed personal injury.

The jury in the underlying action did not find that the insured had committed any of the acts named in the policy definition of "personal injury." Therefore, there is no coverage under USF&G's policy for "personal injury."

In view of our holding that no coverage is provided by the insuring agreements of the policies, it is unnecessary to consider the arguments of the parties with respect to the applicability of various policy exclusions. The judgment of the trial court is reversed and this matter is remanded for the entry of summary judgment in favor of defendants USF&G and Great American.

Reversed and remanded.

Chief Judge ARNOLD and Judge SMITH concur.