HENDERSON v. UNITED STATES FIDELITY & GUARANTY CO.

[346 N.C. 741 (1997)]

S.E.2d 375 (1983); N.C. R. App. P. 10(c)(4). In the present case, defendant shot and killed his wife, Kathy Allen, and wounded Ross Freeman while they sat in a parked car. Defendant then drove away from the scene of the crime and was not apprehended until later that night in another county. This Court has held that jury instructions relating to the issue of flight are proper as long as there is "some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged." *State v. Fisher*, 336 N.C. 684, 706, 445 S.E.2d 866, 878 (1994), *cert. denied*, 513 U.S. 1098, 130 L. Ed. 2d 665 (1995); *see also State v. Tucker*, 329 N.C. 709, 722, 407 S.E.2d 805, 813 (1991). In reviewing the evidence in the present case, we conclude that the trial court had sufficient evidence from which to conclude that defendant had fled the scene of the crime and, therefore, properly instructed the jury on the issue of flight. This assignment of error is overruled.

For the foregoing reasons, we conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.

---

JAMES E. HENDERSON AND WIFE, GLENDA J. HENDERSON v. UNITED STATES FIDELITY & GUARANTY COMPANY, GLENDA LINTON AND GREAT AMERICAN INSURANCE COMPANY

No. 490PA96

(Filed 24 July 1997)

**Insurance § 895 (NCI4th)— indemnity policy for builder—sale of residence in drainage area—advertising liability coverage—unfair trade practice not included**

The term "unfair competition" was not ambiguous as used in insurance policies where plaintiffs purchased from a builder a residence situated in a drainage area subject to severe flooding, plaintiffs brought this action against the builder's insurers alleging bad faith and unfair trade practices, the trial court granted summary judgment for plaintiffs, determining that coverage existed under the advertising injury and advertising liability coverage of the policies, and the Court of Appeals reversed, holding

HENDERSON v. UNITED STATES FIDELITY & GUARANTY CO.

[346 N.C. 741 (1997)]

that "unfair competition" as contained in the policies does not include statutory unfair and deceptive practices prohibited by chapter 75 of the North Carolina General Statutes. Although plaintiffs contend that coverage exists because the acts committed by the builder were found in the underlying action to have been "unfair or deceptive" in violation of Chapter 75, neither policy defines "unfair competition" and the offenses surrounding the term in the policies refer to causes of action brought between business rivals pertaining to the disparagement or appropriation of another's name, style, identity, or other form of representation of products. The North Carolina Supreme Court agrees with those decisions from other states in which the term "unfair competition" requires some component of competitive injury and thus refers only to acts against competitors. A competitor of the insured, but not its customer, can assert a claim which may be covered under the unfair competition category of the advertising injury coverage; this result is consistent with the overall definition of advertising injury in the two policies and is consistent with this State's interpretation of the common law tort of unfair competition as an offense committed in the context of competition between business rivals.

**Am Jur 2d, Insurance §§ 703 et seq.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 124 N.C. App. 103, 476 S.E.2d 459 (1996), reversing a judgment granting summary judgment in favor of plaintiffs entered on 28 July 1995 by Cashwell, J., in Superior Court, Wake County, and remanding the cause for entry of summary judgment in favor of defendant insurance companies. Heard in the Supreme Court 14 May 1997.

*James M. Kimzey and Katherine E. Jean for plaintiff-appellants.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Elizabeth Horton, for defendant-appellee United States Fidelity & Guaranty Company.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Ronald C. Dilthey, for defendant-appellee Great American Insurance Company.*

**HENDERSON v. UNITED STATES FIDELITY & GUARANTY CO.**

[346 N.C. 741 (1997)]

PARKER, Justice.

## THE UNDERLYING ACTION

The underlying action arose out of a real estate transaction in which James and Glenda Henderson ("plaintiffs") purchased from Clifton Hicks Builder, Inc. ("Hicks") a residence situated in a drainage area subject to severe flooding. The evidence at trial demonstrated that before signing the contract to purchase, plaintiffs asked Hicks' president whether there had been or would be any water problems on the lot, to which he responded "no." In fact, the lot had flooded once during construction of the house. The jury found that Hicks had engaged in unfair and deceptive practices as follows: (i) Hicks falsely represented to the Hendersons that they would not have any water problems on lot 82 (the lot the Hendersons purchased from Hicks), (ii) Hicks concealed from the Hendersons the existence of a surface-water flooding problem on lot 82, and (iii) Hicks concealed from the Hendersons the existence and location of a drainage grate and piping system which were installed on lots 83 and 84 and which piped water through lot 82. The trial court concluded that Hicks' acts and omissions constituted unfair and deceptive trade practices in violation of chapter 75 of the North Carolina General Statutes and entered judgment for plaintiffs against Hicks in the amount of $1,375,000 plus pre- and post-judgment interest, costs, and attorneys' fees. Hicks appealed the trial court's decision in the underlying action to the Court of Appeals, which affirmed the trial court. *Henderson v. Clifton Hicks Builder, Inc.*, 117 N.C. App. 731, 453 S.E.2d 877 (unpublished), *disc. rev. denied*, 340 N.C. 112, 456 S.E.2d 314 (1995).

## THE PRESENT ACTION

In addition to the underlying action, plaintiffs instituted the present action on 18 May 1993 against United States Fidelity & Guaranty Company ("USF&G"), Glenda Linton, and Great American Insurance Company ("Great American"). Plaintiffs alleged claims for bad faith and unfair trade practices in their complaint. Plaintiffs dismissed their extracontractual claims on 21 August 1995. These extracontractual claims were the only claims brought against defendant Glenda Linton, an employee of USF&G. Plaintiffs seek recovery in satisfaction of the judgment, costs, and attorneys' fees assessed against Hicks, defendants' insured.

Plaintiffs moved for partial summary judgment against USF&G and Great American on the issue of coverage. At the hearing, defend-

ants also moved for partial summary judgment on the coverage issue. On 28 July 1995 the trial court granted partial summary judgment for plaintiffs, determining that coverage exists for plaintiffs' damages, costs, attorneys' fees, and interest under the "advertising injury" coverage of the USF&G policy and the "advertising liability" coverage of the Great American policy. The trial court also determined that no coverage exists under the "property damage" and "personal injury" provisions of either policy.[1]

Defendants appealed to the Court of Appeals, and plaintiffs asserted cross-assignments of error. On 15 October 1996 the Court of Appeals reversed the trial court's entry of summary judgment in favor of plaintiffs and remanded the case to the trial court for entry of judgment for defendants. The Court of Appeals held that the term "unfair competition" as contained in the "advertising injury" and "advertising liability" coverages of the two policies does not include statutory unfair and deceptive practices prohibited by chapter 75 of the North Carolina General Statutes. *Henderson v. U.S. Fidelity & Guar. Co.*, 124 N.C. App. 103, 109, 476 S.E.2d 459, 463 (1996). The Court of Appeals also held that plaintiffs' damages did not arise out of an "occurrence" as required for coverage under the "bodily injury" and "property damage" provisions of USF&G's insurance policy and the "personal injury" and "property damage" provisions of the Great American policy. *Id.* at 111, 476 S.E.2d at 464. Finally, the Court of Appeals held that there is no coverage under USF&G's policy for "personal injury." *Id.* at 112, 476 S.E.2d at 464. On 7 February 1997 this Court allowed plaintiffs' petition for discretionary review. We agree with the Court of Appeals' decision and affirm, although on different grounds.

## THE POLICIES

Hicks maintained an insurance policy with USF&G that included comprehensive general liability and broad form property damage liability coverage with limits of $1,000,000 per occurrence, and an excess "catastrophe liability policy" through Great American with limits of $1,000,000 per occurrence.

The USF&G policy provides coverage for "advertising injury" as follows:

---

1. Although the trial court did not specifically mention the "bodily injury" provisions of the two policies, the parties have stipulated that "the issue of coverage based on bodily injury was briefed, argued and ruled on by the court in addition to the issue of coverage based on personal injury referred to in the judgment entered by the court."

(A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory . . . .

The policy defines an "advertising injury" as

injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

The Great American policy provides coverage for damages which the insured is legally obligated to pay because of "advertising liability." The policy defines an "advertising liability" as

liability arising out of the named insured's advertising activities for libel, slander or defamation of character; invasion of rights of privacy; infringement of copyright, title or slogan; and piracy or unfair competition or idea misappropriation committed or alleged to have been committed during the policy period.

## DISCUSSION

Plaintiffs contend that coverage exists because the acts committed by Hicks were found by the trial court in the underlying action to have been "unfair or deceptive practices" in violation of chapter 75 of the North Carolina General Statutes and because defendants' insurance policies provide coverage for "advertising injury" and "advertising liability," which includes coverage for "unfair competition." Defendants contend that their respective policies do not provide coverage for Hicks' liability because the applicable provisions of their respective policies do not extend coverage to the violation of statutory unfair or deceptive practices.

Neither policy defines "unfair competition"; however, the rules for determining the meaning of terms used in an insurance policy have been well established. *See Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). Any ambiguity as to the meaning of words used in an insurance policy must be construed in the policyholder's favor. *Id.* at 354, 172 S.E.2d at 522. For an ambiguity to exist the language of the policy must be,

in the opinion of this Court, fairly and reasonably susceptible to either of the constructions for which the parties contend. *Id.* Unless the context requires otherwise, definitions provided in the policy should be applied to terms, and in the absence of such definitions, nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech. *Id.* The court may not under the guise of interpretation rewrite the contract and impose liability where none was intended by the parties to the contract. *Id.*

The context of the term "unfair competition" in the policies is relevant to the term's interpretation. *See id.* "Unfair competition" is listed in both policies among such offenses as libel; slander; defamation; violation of right of privacy; piracy; copyright, title, or slogan infringement; and idea misappropriation. The USF&G policy lists "unfair competition" directly between the offenses of piracy and infringement of copyright, title, or slogan. The Great American policy groups "unfair competition" in a subset of the advertising injury offenses along with the offenses of piracy and idea misappropriation. The offenses surrounding the term at issue all refer to causes of action brought between business rivals for offenses pertaining to the disparagement or appropriation of another's name, style, identity, or other form of representation of products.

The Court of Appeals in the instant case held that, "[g]iven the context in which 'unfair competition' appears in the policies at issue here, it is reasonable to construe the term as a reference to the common law tort of unfair competition, long recognized in North Carolina." *Henderson*, 124 N.C. App. at 109, 476 S.E.2d at 463. The Court of Appeals went on to hold that "the term 'unfair competition' as contained in the 'advertising injury' and 'advertising liability' coverages of the USF&G and Great American policies does not include statutory unfair and deceptive trade practices prohibited by [chapter 75 of the North Carolina General Statutes]." *Id.*

Although an issue of first impression in North Carolina, numerous courts in other jurisdictions have interpreted the meaning of "unfair competition" in the context of "advertising injury" or "advertising liability" provisions of comprehensive general liability policies. Several courts have held consistently with the Court of Appeals that the term "unfair competition" is limited to the common law tort. *See, e.g., Standard Fire Ins. Co. v. Peoples Church of Fresno*, 985 F.2d 446 (9th Cir. 1993); *Gencor Indus., Inc. v. Wausau Underwriters Ins. Co.*, 857 F. Supp. 1560 (M.D. Fla. 1994); *Atlantic Mut. Ins. Co. v.*

*Brotech Corp.*, 857 F. Supp. 423 (E.D. Pa. 1994), *aff'd without op.*, 60 F.3d 813 (3d Cir. 1995); *Nationwide Mut. Ins. Co. v. Dynasty Solar, Inc.*, 753 F. Supp. 853 (N.D. Cal. 1990); *Globe Indem. Co. v. First Am. State Bank*, 720 F. Supp. 853 (W.D. Wash. 1989), *aff'd without op.*, 904 F.2d 710 (9th Cir. 1990); *Pine Top Ins. Co. v. Public Util. Dist. No. 1*, 676 F. Supp. 212 (E.D. Wash. 1987); *A-Mark Fin. Corp. v. CIGNA Prop. & Cas. Cos.*, 34 Cal. App. 4th 1179, 40 Cal. Rptr. 2d 808 (1995); *McLaughlin v. National Union Fire Ins. Co.*, 23 Cal. App. 4th 1132, 29 Cal. Rptr. 2d 559 (1994); *John Markel Ford, Inc. v. Auto-Owners Ins. Co.*, 249 Neb. 286, 543 N.W.2d 173 (1996).

Other courts have declined to adopt the conclusion that the term "unfair competition" refers only to the traditional common law tort but have concluded that the term refers exclusively to conduct between competitors. *See, e.g., Keating v. National Union Fire Ins. Co.*, 995 F.2d 154 (9th Cir. 1993); *Practice Mgmt. Assocs., Inc. v. Old Dominion Ins. Co.*, 601 So. 2d 587 (Fla. Dist. Ct. App.), *disc. rev. denied*, 613 So. 2d 8 (Fla. 1992); *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 422 N.E.2d 518, 439 N.Y.S.2d 858 (1981); *Aetna Cas. & Sur. Co. v. M&S Indus., Inc.*, 64 Wash. App. 916, 827 P.2d 321 (1992); *Boggs v. Whitaker, Lipp & Helea, Inc.*, 56 Wash. App. 583, 784 P.2d 1273, *disc. rev. denied*, 114 Wash. 2d 1018, 791 P.2d 535 (1990).

We agree with those decisions which conclude that the term "unfair competition" requires some component of competitive injury and thus refers only to acts against competitors. We find particularly persuasive the Third Circuit Court of Appeals' discussion in *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316 (3d Cir. 1995), applying Pennsylvania law. In *Granite* the plaintiffs brought suit against Aamco Transmissions, Inc. (Aamco), asserting that Aamco was liable pursuant to Pa. Stat. Ann. tit. 73, § 201-3 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Granite State Insurance Company (Granite) insured Aamco under a comprehensive general liability insurance policy for personal injury or advertising injury arising out of the conduct of Aamco's business. Aamco contended that it had coverage under the "unfair competition" category of the "advertising injury" coverage. The court held that the Granite policy did not provide coverage for these claims, although the court did not base its decision on the reasoning that the phrase "unfair competition" unambiguously refers only to the traditional common law tort. *Granite*, 57 F.3d at 319. The *Granite* court reasoned as follows:

[C]ourts are not uniform in describing the tort of unfair competition. . . . Therefore, it is not so easy to conclude that there is one narrow and clear category of the common law tort.

Furthermore, regardless of the scope of the common law tort of unfair competition, a person reading the term "unfair competition" as a category of "advertising injury" within an insurance policy would not necessarily understand the term to be limited to a common law definition. . . . In short, we see no valid reason to exclude conduct described in the statute simply because it might not be regarded as unfair competition in a common law sense.

Yet even if the term "unfair competition" within an insurance policy is construed broadly with respect to the character of an insured's conduct, that construction does not determine the class of persons who can present claims against the insured which will be regarded as being claims for unfair competition within the policy. Thus, in order for [the insured] to succeed, it must show that claims by its customers injured by its own practices reasonably can be described as unfair competition claims within the context of the insurance coverage. In this endeavor [the insured] fails for, regardless of the nature of the insured's conduct, a claim by a consumer of its products or services arising from that conduct hardly can be characterized as a claim for unfair competition. After all, "competition" connotes an insured's relationship with other persons or entities supplying similar goods or services.

*Id.* at 319. The *Granite* court held that Granite's insurance policy was "not ambiguous with respect to the relationship required between a plaintiff in an underlying action and an insured for that plaintiff's claim to be considered unfair competition within the policy." *Id.* at 320. The court held that a competitor of the insured, but not its customer, can assert a claim which may be covered under the "unfair competition" category of the "advertising injury" coverage. *Id.*

The statute involved in the underlying action in *Granite* is the "Pennsylvania Unfair Trade Practices and Consumer Protection Law." The Pennsylvania statute distinguishes between "unfair methods of competition" and "unfair or deceptive acts or practices," although it lists them together in one subsection. Pa. Stat. Ann. tit. 73, § 201-2(4) (1993) (amended 1996). Our comparable statute similarly distinguishes between the two concepts. N.C.G.S. § 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, *and* unfair or deceptive acts or practices in or affecting commerce, are

declared unlawful." (Emphasis added.) Our statute is patterned after section 5 of the Federal Trade Commission Act, 150 U.S.C. § 45(A)(1), and we look to federal case law for guidance in interpreting the statute. *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266 S.E.2d 610 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). In *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, 31 L. Ed. 2d 170, 179 (1972), the United States Supreme Court clarified that the "unfair methods of competition" language refers to acts against competitors, while the "unfair and deceptive practices" language protects consumers.

We agree with the *Granite* court that a competitor of the insured, but not its customer, can assert a claim which may be covered under the "unfair competition" category of the "advertising injury" coverage. *See Granite*, 57 F.3d at 320. This result is consistent with the overall definition of "advertising injury" in the two policies. As we have indicated, the term "unfair competition" is listed in both policies among such offenses as libel; slander; defamation; violation of right of privacy; piracy; copyright, title, or slogan infringement; and idea misappropriation. These categories all define claims which an insured's competitor might assert against it.

This result is also consistent with this State's interpretation of the common law tort of unfair competition as an offense committed in the context of competition between business rivals. *See, e.g., Charcoal Steak House of Charlotte v. Staley*, 263 N.C. 199, 139 S.E.2d 185 (1964); *Carolina Aniline & Extract Co. v. Ray*, 221 N.C. 269, 20 S.E.2d 59 (1942); *D-E-W Foods Corp. v. Tuesday's of Wilmington, Inc.*, 29 N.C. App. 519, 225 S.E.2d 122, *disc. rev. denied*, 290 N.C. 660, 228 S.E.2d 451 (1976). In *Extract Co. v. Ray*, 221 N.C. 269, 20 S.E.2d 59, this Court stated: "Unfair competition is not confined to the palming off by one competitor of his goods as the goods of another. The same wrongful result may be brought about by other means or practices." *Id.* at 274, 20 S.E.2d at 62 (citing *International News Service v. Associated Press*, 248 U.S. 215, 63 L. Ed. 211 (1918)). The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money. *International News Service*, 248 U.S. at 239-40, 63 L. Ed. at 221. *See also Ruder & Finn, Inc.*, 52 N.Y.2d at 671, 422 N.E.2d at 522, 439 N.Y.S.2d at 862.

We conclude that, read in context, the term "unfair competition" as used in these policies is not ambiguous. In the context of these

policies, the definition of unfair competition refers to claims which an insured's competitor might assert against it and should not be expanded to include conduct such as that at issue in the underlying action.

The Court of Appeals also held that plaintiffs' damages did not arise out of an "occurrence" as required for coverage under both policies and that there is no coverage under USF&G's policy for "personal injury." We agree with the Court of Appeals' decision and affirm on these issues as well. Accordingly, as modified herein, the decision of the Court of Appeals is

AFFIRMED.